IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHERRY J. TIPPETT, as Personal Representative
of the Estate of GALEN STOLLER, a minor child
and MAIDA HENDERSON, as mother of
GALEN STOLLER, deceased,

    Plaintiffs,

v.                                          Civ. No. 08-CV 298 RLP/RHS

BURLINGTON NORTHERN SANTA FE CORPORATION
a/k/a BNSF, BOARD OF COUNTY COMMISSIONERS FOR
SAN MIGUEL COUNTY and SAN MIGUEL COUNTY, DOES I-X,

    Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Burlington Northern Santa Fe Corporation's (BNSF) Motion to Strike Plaintiffs' Rule 26 Report and To Preclude Plaintiffs' Expert From Testifying and BNSF's Motion for Summary Judgment. A hearing was held on April 13, 2008.

In the afternoon of December 1, 2007, sixteen year old Galen Stoller was killed when the car he was driving was struck by an Amtrak train at a crossing in San Miguel County, New Mexico. The Complaint for Wrongful Death was filed in state court and removed to this Court on March 20, 2008. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1441, 1442.[1]

The Scheduling Order [Doc. 19] was entered on May 14, 2008 and provided that, pursuant to Fed.R.Civ.P. 26(a)(2)(B), Plaintiffs were to submit their expert reports no later than August 29, 2008. The original discovery and dispositive motion deadline was

---

[1] Defendant National Railroad Passenger Corporation d/b/a Amtrak, a governmental agency, was dismissed on October 29, 2008 [Doc. 67], and the Court retained jurisdiction.

extended by agreement of the parties to February 28, 2009 and March 27, 2009, respectively [Doc. 54 & 55]. The deadline for Plaintiffs to submit their expert's report was never extended. On August 29, 2008 Plaintiffs submitted a 16 page "Preliminary Report" (the Report) prepared by their expert, Kenneth W. Heathington, Ph.D, P.E. (Dr. Heathington). *See* Doc. 93-7.

In his Report, Dr. Heathington states that he "made a personal site inspection of the crossing on Monday, June 23, 2008 . . . [and] was able to obtain a lot of data from the site inspection . . . ." *Id.* at 1. He states that the "total data that is to be collected is very large and requires a significant amount of time to be gathered . . . ." *Id.* He then lists throughout the Report various codes, manuals, and procedures that he will need to consult and the need to obtain a survey and photogrammetric analyses.

During the discovery period, BNSF requested some available dates to depose Dr. Heathington. Counsel for Plaintiffs responded on January 7, 2009 and stated that due to scheduling, neither counsel nor Dr. Heathington would be available in January. Counsel went on to say that "given the discovery that has been conducted since initial reports were prepared, Dr. Heathington will be supplementing his opinions and report. I anticipate that the supplementation will be completed by mid-February. You will certainly want to wait until you receive Dr. Heathington's supplemental opinions prior to taking his deposition." *See* Doc. 106-12.

On February 20, 2009 Plaintiffs submitted Dr. Heathington's Supplemental Report (the Supplement). Not counting Dr. Heathington's resume, fee schedule, and list of cases in which he has testified, the Supplement totaled 197 pages. *See* Doc. 106-5, 106-6, 106-7 & 106-8. The Supplement was received eight days before the discovery deadline, six

months after the Rule 26 deadline, and on the same date that BSNF moved for summary judgment [Doc. 93].  The Motion to Strike was filed on February 26, 2009. [Doc. 96]

## Motion to Strike Expert's Report

In 1993 Rule 26(a)(2) was amended to require disclosures of expert's reports, which "must contain. . . a complete statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i).  The deadline for submission of the expert report may be set by court order.  Fed.R.Civ.P. 26(a)(2)(C). Parties are required to supplement these reports if the information is incomplete or incorrect, or otherwise not known to the opposing party.  Fed.R.Civ.P. 26(a)(2)(D) & 26(e).  The failure to disclose or supplement may result in foregoing the withheld information "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

In their Response to BNSF's Motion to Strike, Plaintiffs submitted Dr. Heathington's Affidavit which listed 13 items he deemed necessary for his evaluation and which were not provided to him prior to the August 29, 2008 deadline:  a survey of the area; train volumes; a site inspection; accident history of the area; traffic volume; photographs of Galen's car; the Amtrak crews' deposition testimony; interviews with local residents; the event recorder data downloaded from the engine; BNSF's photographs of the area; photogrammetric analysis; BNSF's engineering instructions; and BNSF's Division Timetable Number 3.  *See* Doc. 106-9, ¶¶ 5(A)-(N)

As BNSF points out in its Reply [Doc. 115], Dr. Heathington was retained sometime prior to May 6, 2008 and the Scheduling Order was entered on May 14, 2008 setting the August 29, 2008 expert report deadline for Plaintiffs.  During that three-month window, Plaintiffs made little, if any, effort to obtain or forward the necessary information.

3

For example, it was up to the *Plaintiffs* to perform the survey, do a site inspection, take photographs of Galen's car (which was in Plaintiffs' possession), conduct interviews with the local residents, and perform the photogrammetric analysis.  Plaintiffs made no request to go on the subject property until June 25 and then never followed up.[2]  The train volumes and traffic volumes were never requested.  The depositions were not noticed until September, 2008, which was *after* the report deadline.  The event recorder and BNSF timetable were provided to Plaintiffs with the initial disclosures; the accident history and engineering instructions were provided on June 18, 2008; and the BNSF photographs were provided on August 15, 2008.

In *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir.), *cert. denied*, 537 U.S. 1066 (2002),  the court reiterated the four factors a district court should consider in light of a Rule 26 violation: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or wilfulness." *Id.* at 953 (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

Applying these factors, the district court must determine whether the Rule 26(a) violation is "justified or harmless" within the meaning of Rule 37(c)(1).  *Woodworker's Supply*, 170 F.3d at 993.  As Rule 26 makes clear, a party in violation  "shall not . . . be permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so disclosed."  Fed.R.Civ.P. 37(c)(1).  The Advisory Committee Notes for the 1993

---

[2] It should be noted, however, that in the Report, Dr. Heathington stated he made a personal site inspection on June 23, 2008.  *See, supra*, at 2.

Amendments for Rule 37(c)(1) states that "[t]his automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56."

Because the Supplement was submitted on the same day as BNSF filed its Motion for Summary Judgment, the prejudice and surprise are apparent. There is no ability to cure this prejudice at the summary judgment stage and that is the current posture of this litigation.[3]

Plaintiffs provide the Court with no explanation as to why the allegedly necessary information was not sought in a timely manner. Nor do they explain why information they did have was not provided to Dr. Heathington. There is simply nothing in the record to explain Plaintiffs' complete lack of diligence. Indeed, at some point prior to the August 29th deadline, Plaintiffs knew they did not have the information necessary for Dr. Heathington to complete his report and yet they did not seek an extension of time from the Court.

The utter lack of regard to the deadlines in the Court's scheduling orders and Rule 26(a) require me to find that the violation was neither justified nor harmless. Accordingly, BNSF's Motion to Strike is granted and Dr. Heathington's Supplemental Report will not be considered in ruling on BNSF's Motion for Summary Judgment.

---

[3] Even if the Court were inclined to allow the Supplement for the purposes of trial, the admission of that report would necessitate an entire re-working of the case. Dr. Heathington's reliance on several different analytic approaches (human factors principles, graphical photogrammetric analysis) as well as his reliance on many and varied studies on train safety would either dramatically expand the already retained experts' opinions or would require new experts to be employed. New reports would be generated. Discovery would be reopened and new trial deadlines would be set due to scheduling conflicts. Although enough time and money can cure almost any deficiency, the Court does not believe that perpetual litigation is what the Tenth Circuit Court of Appeals meant by "cure."

**Motion for Summary Judgment**

Summary judgment is appropriate if the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). An issue of fact is "genuine" if there is sufficient evidence so that a rational trier of fact could find for the non-movant." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999). "An issue of fact is 'material' if, under the substantive law, it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). The court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

The undisputed facts indicate that the crossing in question was marked; there was a stop sign at the crossing; the Amtrak train sounded its whistle prior to arriving at the crossing; and Galen Stoller's car was on the railroad tracks when the train collided with the vehicle. The parties dispute whether Galen stopped at the railroad crossing's stop sign.[4] But whether or not Galen stopped at the stop sign is not "material;" *i.e.*, outcome determinative. *Adler*, *supra*. The issue is whether BNSF breached its duty of care by maintaining a hazardous crossing and that breach was a proximate cause of the accident.

---

[4] BNSF's experts opine that Galen could not have "stopped, looked and listened" for the following reasons: a vehicle stopping at the stop sign had a clear view down the tracks for oncoming trains; the recorders indicated that the whistle was blown prior to reaching the crossing; and Galen's brake lights were on at the time of impact, indicating a car that was slowing down for the tracks, rather than proceeding from a stopped position. Plaintiffs, relying on Dr. Heathington's Report, contend that the train could neither be seen nor heard from the stop sign. This contention is discussed in the text, *infra*.

"In New Mexico, 'a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.'" *Chavez v. Desert Eagle Distributing Co. of New Mexico*, 151 P.3d 77, 80 (N.M. Ct. App. 2006) (quoting *Herrera v. Quality Pontiac*, 73 P.3d 181 (N.M. 2003)), *cert. denied*, 152 P.3d 151 (2007). Whether a duty exists is a question of law for the court. *Herrera*, 73 P.3d at 48. Proximate cause may also be an issue of law "if no facts are presented that could allow a reasonable jury to find proximate cause." *Id*. at 57 (internal quotation marks and citation omitted). Such is the case here.

Dr. Heathington made a personal site inspection on June 23, 2008. He noted the crossing stop sign and the whistle posts in both directions. From these observations he concluded that "[t]here would be very complex driving requirements for motor vehicle operators using the crossing that are due to the complexity of the geometrics in the roadway system." Doc. 93-7 at 3. He also stated there were "severely reduced sight distances for the crossing, and there appears to be sight distance restrictions even when stopped at the STOP sign." *Id*. at 4. Dr. Heathington noted he could not specify the distance restrictions because he lacked the data *Id*.

Finally, Dr. Heathington concluded that the crossing has "very serious safety deficiencies" but stated he did not have the necessary data to support his conclusion. The data he needed, he said, was when "a given time-space relationship exists between the train and motor vehicle." *Id*. at 6.

As Dr. Heathington concedes, he does not have the facts necessary to support his conclusion that the crossing was dangerous. He admits he did not even know whether

7

there were sight restrictions at the stop sign.  These conclusions do not support either an inference or a conclusion that BNSF breached any duty of care it may have had to Galen, or any other motorist, which led to the accident in this case.  A conclusion without a factual predicate is inadmissible under Federal Rule of Evidence 702.  "[N]othing in . . . the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric v. Joiner*, 522 U.S. 136, 146 (1997).

Because Dr. Heathington's testimony is inadmissible, there are no facts in this case from which a jury could find negligence on the part of BNSF. *Herrera*, *supra*.  The Court finds that Plaintiffs have failed to come forward with a genuine issue of disputed and material fact to defeat summary judgment.  The Court finds that Defendant BNSF's Motion for Summary Judgment should be granted.  Accordingly, the Court will deny BNSF's *Daubert* Motion to Exclude Testimony of Kenneth Heathington as moot.

IT IS THEREFORE ORDERED THAT Defendant BNSF's Motion to Strike [Doc. 96] is granted;

IT IS FURTHER ORDERED THAT Defendant BNSF's Motion for Summary Judgment [Doc. 93] is granted; and

IT IS FURTHER ORDERED THAT BNSF's *Daubert* Motion to Exclude Testimony of Kenneth Heathington [Doc. 121] is denied as moot.

IT IS SO ORDERED.

_____
Honorable Richard L. Puglisi
United States Magistrate Judge