IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAIDA HENDERSON and KEN STOLLER, M.D.,
as Co-Personal Representatives of the Estate of
GALEN STOLLER, a minor child, and
MAIDA HENDERSON, as mother of
GALEN STOLLER, deceased,

    Plaintiffs,

v.                                                                    CIV 08-0298 KBM/RHS

BOARD OF COUNTY COMMISSIONERS
FOR SAN MIGUEL COUNTY and
SAN MIGUEL COUNTY; DOES I-X,

    Defendants.

# MEMORANDUM OPINION AND ORDER
# ON DEFENDANT SAN MIGUEL COUNTY'S
# MOTION FOR SUMMARY JUDGMENT (*DOC. 191*)

    THIS MATTER comes before the Court on *San Miguel County Defendants' Motion and Brief for Summary Judgment on Plaintiffs' Negligence Claims (Doc. 191)*, filed February 10, 2012 and fully briefed on March 5, 2012. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties consented to have me serve as the presiding judge and enter final judgment. *See Docs. 9, 10, 12, 169, 170*. Having carefully reviewed the parties' submissions, the relevant authorities, and being otherwise fully advised, I find that the County Defendants' Motion is well-taken and will be granted.

**I.**    **BACKGROUND**

    As this marks the third occasion upon which a court has examined Plaintiffs' claims in the context of a summary judgment motion, I will not recite the facts of the case, other than to

say this case concerns a collision between an Amtrak passenger train and a car driven by a sixteen-year-old boy resulting in his death.

Previously, Magistrate Judge Richard L. Puglisi, presiding by consent, granted summary judgment to Defendant Burlington Northern & Santa Fe Railroad Corporation ("BNSF") after striking the supplemental report of Plaintiff's expert, Kenneth Heathington, Ph.D., P.E. and precluding Dr. Heathington from testifying at trial. *See Doc. 124* at 8 ("Because Dr. Heathington's testimony is inadmissible, there are no facts in this case from which a jury could find negligence on the part of BNSF."). Likewise, Judge Puglisi granted summary judgment to Defendant San Miguel County, finding that "[t]here is simply no evidence in this case that the County breached any duty to Galen which was a proximate cause of his death." *Doc. 149* at 5.

Plaintiffs appealed to the Tenth Circuit, which affirmed the entry of summary judgment in Defendant BNSF's favor, but reversed summary judgment as to Defendant San Miguel County. *See Doc. 163-1* at 28. Notably, the Tenth Circuit did not consider the merits of Plaintiffs' claims of negligent acts against San Miguel County because "'[f]or purposes of its motion for summary judgment and this appeal only, San Miguel admits it[] had a duty to maintain a safe roadway and that it breached that duty . . . .'" *See id.* at 23. For some unknown reason on that appeal, San Miguel County "only dispute[d] whether that negligence was a proximate cause of the collision." *Id.* at 25. The Tenth Circuit panel indicated that it could not "say as a matter of New Mexico law that Galen's alleged negligence in failing to stop at the stop sign or misjudging the speed of the train after stopping is so far removed from San Miguel's **admitted** negligence that his conduct constitutes an intervening cause, breaking the proximate cause chain." *Id.* at 27 (emphasis added).

After continued litigation on remand to this Court, Plaintiffs have now elected not to offer Dr. Heathington as an expert witness at the upcoming trial against San Miguel County. *See Doc. 188* (regarding withdrawal of expert witnesses and reports); *Doc. 190* (vacating scheduled deposition of Dr. Heathington). Based upon that development, Defendant San Miguel County seeks summary judgment, arguing that Plaintiffs are unable to substantiate their claims of negligence absent expert testimony. *See Doc. 191* at 3. Whereas its previous motion for summary judgment was based strictly upon proximate cause, the County clarifies that the instant motion contends that Plaintiffs cannot establish breach of any legal duty. *See id.*

## II.   LEGAL STANDARD

### A.   Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. FED. R. CIV. P. 56(c)(1)(A) (emphasis added). Alternatively, parties may "show[] that materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)). Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2).

The Court need only consider the materials cited by the parties. FED. R. CIV. P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment. FED. R. CIV. P. 56(e). The court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond. FED. R. CIV. P. 56(f).

### B.  Tort Liability

In New Mexico, governmental entities are generally immune from tort liability, except as waived by the Tort Claims Act. *See* N.M. Stat. Ann. § 41-4-4(A) (1978). Such immunity does not apply in cases of negligence "during the construction, and in subsequent maintenance of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." N.M. Stat. Ann. § 41-4-11(A). This waiver of immunity does not include liability for damages caused by:

> (1) a defect in plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; (2) the failure to construct or reconstruct any bridge, culvert, highway, roadway, street,

> alley, sidewalk or parking area; or (3) any deviation from standard geometric design practices for any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area allowed on a case-by-case basis for appropriate cultural, ecological, economic, environmental, right-of-way through Indian lands, historical or technical reasons.

N.M. Stat. Ann. § 41-4-11(B).

New Mexico courts have struggled with the distinction between design of a roadway, for which immunity is preserved, and maintenance, for which immunity is waived. *See Romero v. State*, 112 N.M. 291, 297, 814 P.2d 1019, 1025 (Ct. App. 1991) ("*Romero I*"), *rev'd in part*, 112 N.M. 332, 334, 815 P.2d 628, 630 (1991) ("*Romero II*"). In *Romero I*, the New Mexico Court of Appeals held that "the course the roadway takes, the way in which the roadway is laid out on the surface, the width of the roadway and shoulders, and like matter" are necessarily included in "design" and immunity therefore exists for these types of items. *Romero I*, 112 N.M. at 297, 814 P.2d at 1025. In *Romero II*, the New Mexico Supreme Court reversed this holding in part, finding that "a factor like the width of the shoulder is not probative solely of (or relevant to) design. It could also be probative of (or relevant to) negligent maintenance of the roadway." *Romero II*, 112 N.M. at 334, 815 P.2d at 630.

The New Mexico Court of Appeals similarly reversed summary judgment entered by the trial court in *Madrid v. New Mexico State Hwy. Dept.*, finding that while "the blueprint location of fences and protective measures in the original plan for the highway project are matters of design," a gap in the fence – even in an area designated as unfenced – could be a maintenance issue. 117 N.M. 171, 174-75, 870 P.2d 133, 136-37 (Ct. App. 1994). "The question of whether the Department complied with its highway design necessarily involves questions of fact such as whether the Department secured an agreement from the property owners to construct or maintain

5

fences, or alternatively whether the Department made a fact determination that livestock could not enter the highway." *Id.* at 175, 870 P.2d at 137.

It appears to be clear, however, that "the absence of traffic controls is a condition of a highway and is, therefore, the subject of maintenance" for which immunity has been waived. *Grano v. Roadrunner Trucking, Inc.*, 99 N.M. 227, 228, 656 P.2d 890, 891 (Ct. App. 1982). *See also Gallegos v. Sch. Dist. of West Las Vegas*, 115 N.M. 779, 780, 858 P.2d 867, 878 (Ct. App. 1993) (holding that location of bus stop was not a matter of design absent evidence that "this particular school bus stop was indeed part of the design or plan of the road"). However, where, as here, there is a railroad crossing, "generally it is the **railroad's duty** to provide adequate warnings at its own crossings." *Lopez v. Southern Pacific Co.*, 499 F.2d 767, 774 (10th Cir. 1974) (emphasis added), *abrogated on other grounds*, *Scott v. Rizzo*, 634 P.2d 1234, 1241-42 (1981) (adopting pure comparative negligence), *overruled on other grounds by Herrera v. Quality Pontiac*, 134 N.M. 43, 73 P.3d 181, 186 (2003).

C.   **Expert Testimony**

Expert testimony is admissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The corollary to this rule is that if the fact in issue is within the ken of the average lay juror, expert opinion testimony is not necessary." *Mott v. Sun Country Garden Prods., Inc.*, 120 N.M. 261, 269, 901 P.2d 192, 200 (Ct. App. 1995) (citing *United States v. Weiner*, 3 F.3d 17, 21-22 (1st Cir. 1993)). New Mexico courts have held, for instance, that expert testimony is not required regarding driver inattention as a potential cause of a car accident. *See id.* Expert testimony is also unnecessary in "ordinary" construction cases. *See Cumming v. Nielson's, Inc.*, 108 N.M. 198, 201, 769 P.2d 732, 735

(Ct. App. 1988). The Court held that "[h]ighway contractors have a duty at common law to take adequate measures to protect the safety of the traveling public, which includes the duty to protect the public from dangerous conditions within the construction zone." *Id.* at 200, 769 P.2d at 734. Such a duty "may include the duty to protect the public from snares, traps, and pitfalls by erecting appropriate warning signs, as well as the duty to adequately mark highway detours they have constructed and to warn of excavations they have created." *Id.* at 201, 769 P.2d at 735. Although the Court in *Cumming* noted that "[m]ost people drive vehicles and are familiar with roadways," it also held that negligence in highway construction cases must be proven by violation of an industry standard. *See id.* Contrasted with medical malpractice cases concerning surgical procedures and proper diagnostic techniques, contractor liability "can be determined by resort to common knowledge ordinarily possessed by an average person." *See id.* Indeed, the *Cumming* court held that in contractor liability cases, "the requirement for expert testimony to establish breach of duty is the exception rather than the rule." *Id.*

In railroad cases, however, expert testimony is often necessary. In the present case, for example, San Miguel County's co-defendant, BNSF obtained summary judgment in its favor because there was no expert testimony to establish a breach of the standard of care. *See Doc. 124* at 8. The Tenth Circuit affirmed summary judgment in favor of BNSF, finding that "[n]one of [Plaintiffs'] evidence suggests that BNSF breached its duty in designing or constructing the crossing because it does not describe in more than general terms the crossing's configuration, construction, design, or elevation." *See Doc. 163-1* at 23.

### III.   ANALYSIS

San Miguel County argues it "now sits in exactly the same position as did BNSF when

7

Judge Puglisi struck the expert report of Plaintiffs' traffic engineer, Dr. Kenneth Heathington." *Doc. 195* at 15.  Upon consideration of the undisputed material facts and each of the ways in which Plaintiffs contend San Miguel County was negligent, I have to agree.

There is no dispute that the accident in question occurred on Old Las Vegas Highway, a dirt road "that runs essentially parallel to the train track and then makes about a 90-degree turn to the left about 200 feet from the track." *Doc. 191-5* at 8 (quoting from Dr. Heathington's February 2009 report, commissioned by Plaintiffs).  After crossing the track, the road "turns to the right about 30 feet from the track and then runs essentially parallel to the track for some distance." *Id.*  Old Las Vegas Highway, also referred to as Wildflower Lane, is a county road.  However, the County did not own, control, or maintain the portion of the road within the BNSF railroad track known as the right-of-way, which extends from a fence line to the nearest rail, approximately 50 feet.  *See Doc. 191* at 4, ¶8; *Doc. 193* at 2-3 (disputing ¶ 8 only insofar as it "incorrectly state[s] that there was a stop sign and a 'cross-buck' sign at the BNSF tracks").

Plaintiffs contend that the County: "(1) negligent[ly] fail[ed] to clear excessive vegetation from the sight triangle; (2) fail[ed] to provide an appropriately-wide, level, and stable roadway, so that drivers can focus on possible approaching trains rather than oncoming cars or driving maneuvers; (3) fail[ed] to properly sign and mark the roadway or provide signs to alert drivers to the upcoming unprotected railroad crossing; and/or (4) otherwise take reasonable steps to make its highway/property reasonably safe for the traveling public." *See Doc. 192* at 4.

Distancing themselves somewhat from these specific contentions, Plaintiffs argue in response to the Motion for Summary Judgment that expert testimony is not required to establish either the applicable standard of care or any breach thereof.  *See generally Doc. 193*.  First,

8

Plaintiffs argue that the average juror is sufficiently familiar with roads and driving to determine the standard of care that the County should have met in maintaining the road at issue. *See Doc. 193* at 15 ("Indeed, the condition of the crossing and safety concerns like the inability to see approaching trains is better conveyed to a jury by photos and the real-world experience of the witnesses who regularly used this crossing, than by an expert traffic engineer who must rely on surveys and statistical data."). Second, Plaintiffs contend that the applicable standard of care is clearly set out by the American Association of State Highway and Transportation Officials ("AASHTO") and/or the Manual on Uniform Traffic Control Devices ("MUTCD"). *See Doc. 193* at 17 ("New Mexico statute and case law clearly establish the County's mandatory duty to regulate, warn, and guide traffic, and even establish the details of the standard of care, by requiring the County to comply with AASHTO and MUTCD standards."). The Federal Highway Administration publishes the Railroad-Highway Grade Crossing Handbook which can be downloaded for free, and, according to Plaintiffs, "*anyone* can understand its soup to nuts explanation of the applicable standards and the process for making railway-highway crossings safe." *Id.* at 18 (emphasis in original).

After considering the parties' positions, I agree with Defendant San Miguel County that the need for expert testimony should be considered on the basis of each discrete claim of negligence. *See Doc. 195* at 1-2. Plaintiffs attach over 200 pages to their summary judgment response, including testimony, photographs, and industry standards proposed as the applicable standards of care. *See Doc. 193-1 through 193-20*. In order to make the best use and sense of this data, I will consider it with regard to each of Plaintiffs' separate claims.

A.      **Duty to Clear Excessive Vegetation from the Sight Triangle**

The facts are undisputed that the County has no responsibility for maintenance of the road within the BNSF right-of-way, which extended from a fence line to the nearest rail, approximately 50 feet. The position of the "sight triangle" is therefore significant.

The Handbook sets out "specific standards for sight triangles approaching railroad crossings." *Id.* It appears that a sight triangle is formed by (1) the distance of the vehicle driver from the track, (2) the distance of the train from the crossing, and (3) the unobstructed sight line from the driver to the front of the train. *See Doc. 193-18* at 7. To calculate an the appropriate sight distance along the railroad tracks to permit the vehicle to cross and be clear of the crossing upon arrival of the train ($d_T$), it is necessary to consider the velocity of the vehicle ($V_v$), perception-reaction time ($t$), driver deceleration ($a$), distance from the stop line to the near rail ($D$), the length of the vehicle ($L$), and the distance between the outer rails ($W$). *See id.* As I understand it, the formula for calculating a sight triangle looks like this:

$$d_T = \frac{V_T}{V_v}(A)V_v t + \frac{BV_v^2}{a} + 2D + L + W$$

*Id.*

I find that this type of calculation, while perhaps possible for the average lay juror to perform in theory, is not "within the ken of the average lay juror." *See Mott v. Sun Country Garden Prods., Inc.*, 120 N.M. at 269, 901 P.2d at 200. An explanation of the uses and benefits of a sight triangle, as well as the appropriate calculation of same, would "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a). Moreover, an expert opinion is necessary to assist the jury in determining that the above calculation is

applicable under the specific conditions at issue in this litigation.  As the County points out, the Handbook that sets out the above calculation itself provides that it "does not constitute a standard, specification, or regulation."  *See Doc. 195-2* at 2.  Thus, expert testimony is needed to establish that the Handbook's provisions apply.

In a tacit acknowledgment that the above equation and the contents of an engineering study might be over the average juror's head, Plaintiffs submit that the issue isn't "whether the County applied proper engineering judgment under AASHTO and/or MUTCD guidelines" but instead "whether the County acted reasonably to make the roadway safe when the County applied **no engineering judgment**."  *Doc. 193* at 20 (emphasis in original).  However, without the benefit of an expert, it is not clear to the average person what a sight triangle is or why it might be important, let alone how it should be calculated.  Absent this critical evidence, a reasonable jury cannot find the County negligent.

> **B.    Duty to Properly Sign and Mark the Roadway or Provide Signs that Alert Drivers to Upcoming Unprotected Railroad Crossing**

The MUTCD itself warns against its use in the absence of applied engineering judgment.  At the beginning of the Manual, it states, "[t]his Manual describes the application of traffic control devices, but shall not be a legal requirement for their installation."  *Doc. 191-6* at 2.  The Manual explains that "[t]he decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgment.  Thus, while this Manual provides Standards, Guidance, and Options for design and application of traffic control devices, this Manual should not be considered a substitute for engineering judgment."  *Id.*

11

There are additional factors that counsel against the use of the Manual in the absence of an expert engineer. Perhaps most significantly, there is the existence of BNSF's right-of-way and the fact that BNSF provided signage within that right-of-way. *See Doc. 163-1* at 16 (recognizing that "[i]t is undisputed that BNSF marked the crossing with a stop sign and a railroad crossing symbol (though not an official, reflectorized crossbuck sign) approximately twelve to fourteen feet from the tracks"). I find that BNSF's signage is relevant to the County's duty of care and any breach thereof. The MUTCD alone, without explanation from a qualified expert, cannot take the specific circumstances in this case, including but not limited to specific terrain or the BNSF right-of-way, into account. I have already ruled that "[r]egardless whether Dr. Heathington testifies for Plaintiffs, I will not preclude San Miguel County from arguing comparative fault at trial on the limited grounds that Plaintiffs present." *Doc. 187* at 7. In light of these complicating factors, as well as the MUTCD's statement that it "should not be considered a substitute for engineering judgment," expert testimony is necessary to establish negligence relating to traffic controls.

     **C.**    **Duty to Provide an Appropriately Wide, Level, and Stable Roadway, So That Drivers Can Focus on Possible Approaching Trains Rather Than On Oncoming Cars or Driver Maneuvers**

Whereas Plaintiffs' previous claims fall squarely within the New Mexico Tort Claims Act's definition of "maintenance," I find that the width, path, and grading of the roadway are elements of roadway "design." Because Plaintiffs do not identify any specific condition of the road which may have caused or contributed to the accident, it is impossible to determine whether they intend to raise an issue of design or maintenance. They complain generally about the roadway, characterizing it as "a narrow, winding, rutted/pot-holed, dirt and gravel road with no

12

shoulders," but they provide no facts from which a jury could reasonably conclude that any of these factors concerning the road caused or contributed to the accident. Given that the roadway (as well as the County's potential liability) ends approximately fifty feet before the railroad crossing where the accident occurred, Plaintiffs must point to something more specific. As presently argued, there are no facts from which a jury may reasonably find the County liable even assuming an applicable waiver of Tort Claims Act immunity. Summary judgment is therefore appropriate as to Plaintiffs' third allegation of negligence.

### D.   Other Reasonable Steps To Make the Highway/Property Reasonably Safe for the Traveling Public

Defendant San Miguel County correctly points out that Plaintiffs have not formally identified what "other reasonable steps" they contend that the County should have undertaken. *See Doc. 195* at 2. As Defendants acknowledge, however, Plaintiffs' briefing sets forth additional theories of the County's negligence, including the County's alleged (1) failure to work with BNSF either to make the crossing safe or close the crossing, *see Doc. 193* at 19 n.2, 22 & 24, and (2) failure to obtain professional engineering services, *see id.* at 20.

Given the undisputed facts regarding BNSF's right-of-way, and the absence of any additional facts to suggest that the County assumed some duty or control over the property within the right-of-way, I cannot find that the County had a legal duty to work with BNSF to make the crossing safe or close the crossing. Likewise, I do not believe the law imposes any duty upon the County to work with an engineer in order to properly maintain public roadways. It is at least theoretically possible, particularly in the absence of expert testimony to the contrary, that the County met its obligations under the law even without the assistance of an engineer. The failure

to consult an engineer, in and of itself, does not prove that the County was negligent.

Wherefore,

**IT IS ORDERED** that the San Miguel County Defendants' Motion for Summary Judgment on Plaintiffs' Negligence Claims (*Doc. 191*) is **granted**. Plaintiffs' Complaint (*Doc. 1-2*) is therefore dismissed with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE